UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 11-cv-22230-COOKE/TURNOFF

JANE DOE,

    Plaintiff,
vs.

NCL (BAHAMAS) LTD.,

    Defendant.
_____/

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT ROSS KLEIN AND INCORPORATED MEMORANDUM OF LAW**

Defendant, NCL (BAHAMAS) LTD. ("Norwegian"), by and through undersigned counsel, hereby moves for entry of an Order excluding and/or limiting the testimony of Plaintiff's expert, Ross Klein, pursuant to Federal Rule of Evidence 702. In support thereof, Norwegian states as follows:

**INTRODUCTION**

Plaintiff alleges that during the course of a cruise aboard the *Norwegian Sun*, she was sexually assaulted. Plaintiff seeks to offer the testimony of Ross Klein ("Klein") at trial to demonstrate, in part, that Norwegian is allegedly aware of the "problem" of sexual assaults on its ships, that Norwegian provided Plaintiff with a false sense of security, especially in regard to the possibility of a sexual assault, and that the likelihood of being assaulted on a cruise ship is higher than in Canada. However, Klein's testimony does not meet the standards for expert testimony under Federal Rules of Evidence 702 and 703 or the law under *Kumho Tire v. Carmichael*, 526 U.S. 137 (1999), and *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993),

because it is speculative, unscientific, anecdotal and lacking in any reliable methodology. As a result, Klein's testimony should be excluded.

## SUBSTANCE OF KLEIN'S OPINIONS

Klein is a professor of social work and sociology at Memorial University in St. John's, Newfoundland, Canada. [Deposition of R. Klein at p. 14, attached hereto as Exhibit "A"]. He fashions himself an expert on the cruise line industry based on his past personal experiences as a cruise passenger. If permitted to testify, Klein will offer the following opinions:

1. Norwegian is in violation of the Cruise Line Vessel Safety Act ("the Act") because there may not have been sufficient surveillance cameras to cover all the public spaces on the ship that were at issue. [Exhibit A. at p. 7]. Norwegian is out of compliance "with the spirit of the law." [Exhibit A at p. 12]. Klein's opinion is derived solely from the deposition transcript of Norwegian's security officer, Joe Fail, which was provided to Klein by Plaintiff's counsel. [Exhibit A at p. 7]. Klein never looked at a diagram of the vessel's cameras. [Exhibit A at p. 10]. Klein did not watch the surveillance tapes even though Plaintiff's counsel had the proper device to view same. [Exhibit A at p. 11].

2. Norwegian's security guide does not meet the requirements of the Act. [Exhibit A at p. 30-31]. While he admits that the security guide meets all the reporting requirements, Klein claims that it fails to sufficiently warn passengers because the Act includes the phrase "prevent." [Exhibit A at p. 30-32]. He states that "data indicates that some areas of a ship are more risky than others and some passengers are more vulnerable than others[.]" [Exhibit A at p. 33].

3. The cruise industry as a whole has an appreciation for the "problem" of sexual assaults on cruise ships. [Exhibit A at p. 18]. Klein does not know whether Norwegian

specifically has an appreciation of the dangers of sexual assaults, but guesses the problem presumably exists on Norwegian ships. [Exhibit A at p. 20]. His opinion is drawn from his "experience on board NCL ships in the mid 1990s" and his assumption that Norwegian has similar approaches to security as the other cruise lines, "as best [he] can tell." [Exhibit A at p. 20].

4. Incidents of sexual assault are underreported on cruise ships. [Exhibit A at p. 67]. This opinion is derived from assumptions "based on a social scientific kind of insight." [Exhibit A at p. 68]. Klein admits no data exists showing underreporting of sexual assaults is higher on a cruise ship than on land, stating that "[w]e would need to undertake research in order to determine that." [Exhibit A at p. 67-69]. Klein claims that although there is no data, "we would assume that under reporting would be more likely onboard a cruise ship." [Exhibit A at p. 67–69].

5. Passengers on cruise ships are less safe than they are led to believe and with respect to certain crimes, they are less safe on the ship than on land. [Exhibit A at p. 40]. To arrive at that conclusion, Klein reviewed the documents available in the case and drew on his past experience cruising. [Exhibit A at p. 78]. He admitted the jury could read the documents he was provided and arrive at their own conclusion. [Exhibit A at p. 79].

6. The likelihood of being sexually assaulted on a cruise ship is 50% greater than the likelihood of being sexually assaulted on land in Canada. [Exhibit A at p. 58]. Klein took the FBI's crime data as reported from the cruise lines and re-characterized or re-classified incidents not labeled sexual assaults as sexual assaults if they fit under Canada's description of the offense. [Exhibit A at p. 21]. Klein performed this re-characterization because he does not believe United States law and the FBI correctly label sexual assault incidents. [Exhibit A at p. 22]. This re-

classification turned on Klein's interpretation of Canadian law and none of his classifications were derived from United States law. [Exhibit A at p. 21, 24].

7.      As he could only compare cruise line statistics to Canadian statistics under his model, Klein could not offer any opinion on statistics in the United States or in the Dallas metropolitan area where Plaintiff lives and works. [Exhibit A at p. 57-58]. Lastly, he stated, "I believe when I did a quick work up when I first received the NCL data, and it's not included in my opinion, I believe that the rate of sexual assault onboard NCL ships was comparable to the rate on land." [Exhibit A at p. 81].

## MEMORANDUM OF LAW

Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Daubert*, 509 U.S. at 589; FED. R. EVID. 702. When analyzing a challenge to expert testimony under *Daubert*, a court must determine whether a proffered expert has employed "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

As the gate-keeper, "[t]he trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned and not speculative before it can be admitted." *See* FED. R. EVID. 702 Advisory Committee Notes. Courts have routinely rejected expert testimony where the proffered opinion has not been tested, has not been subjected to scrutiny of peer review, has not gained general acceptance and is otherwise not founded upon "scientific methodology" and "reliable foundation." *See Chikovsky v. Ortho Pharmaceuticals Corporation*,

832 F. Supp. 341, 345 (S.D. Fla. 1993); *Byrnes v. Honda Motor Co.*, 887 F. Supp. 279 (S.D. Fla. 1994). The trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. This involves assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id*. at 592. Here, Klein's opinions are not founded upon any scientific or other reliable methodology. Instead, they are merely personal opinions based on conclusory assumptions and Klein accordingly should be precluded from testifying in this matter.

**I.      Klein cannot offer legal opinions that extend far beyond his expertise.**

Klein seeks to offer prejudicial and improper legal opinions that exceed the scope of his expertise. Federal courts consistently exclude expert testimony intended to inform jurors about the applicable law or to present opinions concerning the application of the law to the facts of a given case. *See United States v. Newman,* 49 F.3d 1, 7 (1st Cir. 1995). Instructing the jury on legal matters is the exclusive domain of the judge. Although Federal Rule of Evidence 704 permits an expert witness to give expert testimony that "embraces an ultimate issue to be decided by the trier of fact," an expert witness is prohibited from rendering a legal opinion because doing so would usurp the court's role and possibly confuse the jury. *In re Rosenberg*, 2012 WL 3870351, *2 (Bkrtcy. S.D. Fla. 2012).

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548 (11th Cir. 1998), is instructive. In *Harcros*, municipal public utilities boards sued chlorine distributors, alleging price-fixing, bid-rigging, allocating markets, and conspiracy for sealed bid auctions during the municipalities' chlorine procurement. *See id*. at 553. The chlorine distributor employed an expert statistician to give a range of opinions, including whether he believed the evidence demonstrated collusion and what the legal standards applicable to the case would be. *See id*. at 665. The Court admitted all

of his testimony, except that purporting to offer a legal opinion. *See id*. The Court found that his "opinions regarding the legal standards applicable to this case are outside of his competence and must be excluded." *Id*.

Here, Klein seeks to offer an expert opinion on whether Norwegian is in violation of the Act for (1) failing to provide what he deems to be sufficient surveillance camera coverage and (2) providing an inadequate security guide for passengers. Not only would his legal opinion be improper under the case law, but offering this opinion would be wholly outside of his area of expertise. Klein is not a lawyer, has never been to law school, does not hold a legal degree, is not licensed to practice law anywhere, has never offered a legal opinion to a court, is not qualified to practice law, and is not an expert on the Act. [Exhibit A at p. 12]. He has no basis to offer opinions regarding the interpretation or application of the Act and doing so usurps the Court's role. As a result, his legal opinion testimony must be excluded.

**II. Klein cannot offer opinions based on conclusory, anecdotal evidence because that is not a reliable methodology.**

This Court should exclude Klein from offering opinions based solely on anecdotal evidence and not verifiable scientific data. Expert testimony should not be based on temporal proximity and anecdotal evidence, *see Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1312 (11th Cir.1999), and the expert's testimony must be based on "more than subjective belief or unsupported speculation." *Haggerty v. The Upjohn Co*., 950 F. Supp. 1160 (S.D. Fla. 1996). Opinions founded on anecdotal evidence are not built on a reliable methodology and fail to satisfy the requirements of *Daubert*. *See United States v. Masferrer*, 367 F. Supp. 2d 1365 (S.D. Fla. 2005).

*J & V Dev., Inc. v. Athens-Clarke County*, 387 F. Supp. 2d 1214 (M.D. Ga. 2005), is directly on point. In *J & V*, a development company sued its local county for violation of the

Fair Housing Act when it denied the development company a permit to build a subdivision. *See id*. at 1216. The development company identified a professor of sociology and economics as its expert on statistics, demographics, and affordable housing. *See id*. At a *Daubert* hearing, the expert testified that he assumed affordable housing, like the development company's subdivision, was necessary in Athens-Clarke County and based his opinion on anecdotal evidence. *See id*. He admitted he had done no research and did not rely on any studies. *See id*. Rather, he derived his opinion from Plaintiff's counsel. *See id*. Accordingly, the court excluded nearly all of the expert's testimony due to his unreliable methodology and overuse of anecdotal evidence. *See id*. at 1227. The court noted it is insufficient for the expert to simply vouch for the reliability of his opinions because the court "cannot just take Plaintiff's counsel's or [the expert's] word that his method was reliable and that he gave reliable opinions." *Id*. An expert's reading of data "doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were 'derived by the scientific method' be deemed conclusive." *Id*. (citing *Daubert II,* 43 F.3d at 1315-16).

Like the expert in *J & V*, Klein's opinions should be excluded. First, Klein believes the cruise industry as a whole has an appreciation for the "problem" of sexual assaults on cruise ships that it hides from passengers. [Exhibit A at p. 18]. He also contends passengers are not as safe as they are led to believe by the cruise line. [Exhibit A at p. 41]. These opinions are based on Klein's assumption that Norwegian has a similar approach to security as the other cruise lines "as best [he] can tell" and his "experience on board NCL ships in the mid 1990s." [Exhibit A at p. 20]. He also reviewed all the documents available in the case and drew on his experience cruising with other companies. [Exhibit A at p. 79]. With this methodology, millions of Norwegian's passengers would possess the same level of "expertise" that Klein claims. His

opinions derived from anecdotal, common sense "inferences" should all be appropriately excluded by this Court.

Klein's opinions regarding the underreporting of sexual assaults on cruise ships are also based on inadequate information as they are derived from assumptions "based on a social scientific kind of insight." [Exhibit A at p. 67-68]. Klein admits no data existed showing that underreporting of sexual assaults is higher on cruise ships than on land, but states that "we would assume that underreporting would be more likely onboard a cruise ship." [Exhibit A at p. 67–69]. This opinion is a pure assumption supported by no discernible methodology and should be excluded.

### III. Klein cannot offer opinions regarding the likelihood of sexual assaults on cruise ships as compared to land because his methodology is unreliable.

The most dubious aspect of Klein's testimony is the "methodology" he employed when reclassifying incidents reported to the FBI as sexual assaults under Canadian law. All of his testimony regarding sexual assaults under this rubric must be excluded. Similarly, in *Jack v. GlaxoSmithKline Wellcome, Inc.*, 239 F. Supp. 2d 1308 (N.D. Ga. 2002), the plaintiff attempted to proffer an expert witness with an unreliable methodology to demonstrate she was injured by the pharmaceutical company's cigarette cessation medication. *See id*. Just like Klein, the expert in *Jack* rearranged the data collected from the pharmaceutical company's drug trials in a way he felt was more appropriate. *See id*. at 1316. The expert took the rearranged data, conducted a statistical analysis, and determined that the medication could cause panic disorders. *See id*. Not only was the expert's methodology untested and unreliable, the court stated it was "uncertain that any accurate test could be performed since the technique relies primarily on reclassification of final data presented in other studies." *Id*. at 1316–17. The court continued,

> much of [the expert's] analysis is based on his own suspicions about what the investigator, who was examining the actual patient, erroneously did or concluded. He did not rely on the raw data from the previous studies. Moreover, he generally questions the basis for the classifications employed by the Glaxo trial administrators. As such the court finds that his analysis is based, at least in significant part, on his own ipse dixit. Such opinions are generally not admissible under the rules of evidence or *Daubert.*

*Id*. at 1316.

The court's concerns about the expert in *Jack* mirror those posed by Klein, however, Klein's statistical opinions are even more devoid of reliability than those in *Jack*. Klein posits that one's likelihood of being sexually assaulted on a cruise ship is 50% greater than the likelihood of being sexually assaulted on land in Canada. [Exhibit A at p. 58]. To arrive at this conclusion, he took the FBI's crime data as reported from the cruise lines and re-characterized incidents that were not labeled sexual assaults as sexual assaults if they fit under Canada's description of the offense. [Exhibit A at p. 21]. Klein does not believe United States law and the FBI correctly label sexual assault incidents so "his interpretation would apply under Canadian law." [Exhibit A at p. 22]. Not only is Klein subjectively re-classifying the FBI's data, but his re-classification hinges on his interpretation of Canadian law. Again, he is not a legal expert and his methodology can only be described as untested and unreliable.

Klein's opinions would also be irrelevant and confusing to a jury and should be properly excluded under Federal Rule of Evidence 403. It is difficult to see what benefit a jury could derive from a comparison of cruise ship safety to safety in Canada as Plaintiff is not a Canadian citizen and Canadian law is not applicable to this case. As Klein could only endeavor to compare cruise line statistics to Canadian statistics, he could not offer any opinion on the likelihood or rate of sexual assault in the United States or in the Dallas metropolitan area, where Plaintiff lives and works. [Exhibit A at p. 58-59]. To determine whether Norwegian owed

CASE NO.: 11-cv-22230-COOKE/TURNOFF

Plaintiff a duty to warn of sexual assaults on the *Sun*, the jury must be able to decide whether Plaintiff was at an unreasonable risk of being the victim of a sexual assault on the vessel as opposed to on land. Without a comparison to the metropolitan area where Plaintiff lives, Klein's opinion does not aid the jury in the least. Instead, it will confuse the jury as the rate of sexual assaults in Canada or Canada's definition of the term "sexual assault" is not at issue in this case. Like the expert in *Dukes*, this Court should "safely disregard what [Klein] has to say." *Dukes*, 131 S. Ct. at 2553.

WHEREFORE, Defendant, NCL (BAHAMAS) LTD., respectfully requests that this Honorable Court grant its Motion *in Limine* and enter an Order fully excluding the testimony of Ross Klein, appropriately limiting his testimony, or granting any further relief this Court deems just and proper.

Respectfully submitted,

MASE, LARA, EVERSOLE, P.A.
*Attorneys for Defendant*
2601 South Bayshore Drive, Suite 800
Miami, Florida  33133
Telephone:  (305) 377-3770
Facsimile:   (305) 377-0080

By:     */s/ Lauren E. DeFabio*
            CURTIS J. MASE
            Florida Bar No. 478083
            cmase@mletrial.com
            LAUREN E. DEFABIO
            Florida Bar No.: 84121
            ldefabio@mletrial.com

CASE NO.: 11-cv-22230-COOKE/TURNOFF

## LOCAL RULE 7.1A (3) STATEMENT

Pursuant to S.D. Fla. L.R. 7.1.A.3 counsel for Defendant hereby certifies that the undersigned has conferred with Plaintiff's counsel in a good faith effort to resolve the issues in the subject motion and Plaintiff's counsel has indicated that they do not agree to the relief sought herein.

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2012, I electronically filed the foregoing document with the Clerk to the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parities who are not authorized to received electronically Notices of Electronic Filing.

*/s/ Lauren E. DeFabio*
Lauren E. DeFabio

**MASE LARA EVERSOLE**

CASE NO.: 11-cv-22230-COOKE/TURNOFF

**SERVICE LIST**
**Case No. 11-22230-COOKE/TURNOFF**

Keith S. Brais, Esq.
Richard D. Rusak, Esq.
Brais & Associates, P.A.
*Attorneys for Plaintiff*
New World Tower
100 North Biscayne Boulevard
Suite 800
Miami, Florida 33132
Tel.: (305)416-2901
Facsimile: (305) 416-2902

18221/1480

**MASE LARA EVERSOLE**