UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 11-cv-22230-COOKE/TURNOFF

JANE DOE,

    Plaintiff,
vs.

NCL (BAHAMAS) LTD.,

    Defendant.
_____/

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT RANDALL JAQUES AND INCORPORATED MEMORANDUM OF LAW**

Defendant, NCL (BAHAMAS) LTD. ("Norwegian"), by and through undersigned counsel, hereby moves for entry of an Order excluding and/or limiting the testimony of Plaintiff's expert, Randall Jaques, pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and in support thereof states as follows:

**INTRODUCTION**

Plaintiff alleges that during the course of a cruise aboard the *Norwegian Sun*, she was sexually assaulted in a women's restroom. The alleged assault occurred following Plaintiff's participation in a Pub Crawl event. Plaintiff seeks to offer the testimony of Randall Jaques at trial to demonstrate, in part, that Norwegian failed to provide a reasonable degree of safety and security for Plaintiff and its passengers, that Norwegian created a dangerous condition, and that Norwegian failed to follow its internal policies. Jaques' testimony, however, completely fails to meet the standards for expert testimony under Federal Rules of Evidence 702 and 703, and the law under *Kumho Tire v. Carmichael*, 526 U.S. 137 (1999), and *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because it is speculative, unscientific, anecdotal and

**MASE LARA EVERSOLE**

lacking in any reliable methodology. Accordingly, Jaques is simply unqualified as an expert to render opinions to the jury in this case and his testimony should be properly excluded.

## SUBSTANCE OF JAQUES' OPINIONS

Jaques is a self-described "maritime safety expert" and a "factual expert" on the cruise industry. [Deposition of R. Jaques at p. 3, 28, attached hereto as Exhibit "A"]. If he is permitted to testify in this matter, he will offer the following opinions:

1. Norwegian failed to provide a reasonable degree of safety and security for its passengers, including Plaintiff, who were served excessive amounts of alcohol and/or became obviously intoxicated during and following participation in the subject Pub Crawl. [Rule 26 Report of R. Jaques at p. 4, attached hereto as Exhibit "B"]. Norwegian's decision to offer the subject Pub Crawl demonstrates its failure to provide a reasonable degree of safety and security. [Exhibit A at p. 81].

2. Norwegian failed to follow its policies and procedures by (a) allowing Plaintiff to become "obviously intoxicated," (b) failing to notifying the bridge after Plaintiff was discovered "in an intoxicated and/or impaired state," (c) failing to take Plaintiff to the medical center, and (d) allowing its employees to sell alcohol to "obviously intoxicated and/or impaired" guests. [Exhibit B at p. 4-5].

3. Norwegian has not followed the Cruise Vessel Security and Safety Act because it supposedly withheld or otherwise failed to produce CCTV footage depicting Plaintiff. [Exhibit B at p. 5]. Jaques claims that he "knows" that Norwegian has this footage. [Exhibit A at p. 93-94]. This footage, in Jaques' opinion, "would have clearly captured [Plaintiff] in an intoxicated and/or impaired state." [Exhibit B at p. 5]. Jaques elaborated that he "will tell the jury that this is something where I consider it to be evidence tampering." [Exhibit A at p. 93].

4.     Pub Crawls are "nothing less than a huge revenue resource for" Norwegian. [Exhibit A at p. 24]. "[T]here are much better ways of obtaining revenue onboard a cruise ship rather than doing it with a pub crawl." [Exhibit A at p. 26]. Pub crawls should "never" happen on a cruise ship. [Exhibit A at p. 26]. Further, someone in Norwegian's "home office decided that they needed to come up with a revenue idea that would boost their sale in alcohol from their weekly voyages and came up – somebody, some rocket scientist came up with the pub crawl." [Exhibit A at p. 29].

5.     Offering a pub crawl on a ship is a security risk. [Exhibit A at p. 81].

6.     The "majority of the cruise lines…are now promoting a family-style venue." [Exhibit A at p. 28]. As a result, pub crawls should not be allowed because you cannot have children "witness the over-intoxication of passengers to the point where they're being vulgar and sexually explicit, out of control." [Exhibit A at p. 28]. Additionally, not only was there "vulgar behavior and sexual connotations" taking place on the subject Pub Crawl, but a review of YouTube videos demonstrates that "this type of behavior is apparently acceptable by all the different ships." [Exhibit A at p. 79].

7.     Pub crawls are dangerous. [Exhibit A at p. 29]. Jaques states that evidence of Plaintiff's alleged assault demonstrates that they are dangerous as does information he read on the internet and on blogs after searching "pub crawls with Norwegian Cruise Line" on Google. [Exhibit A at p. 29].

8.     Plaintiff and the other passengers on the Pub Crawl were "grossly intoxicated" and the photographs produced in discovery demonstrate that these individuals "appear to be [] grossly intoxicated." [Exhibit A at p. 60, 68].

9. When referring to Plaintiff's act of drinking a shot of alcohol from between a man's legs, Jaques opines that Plaintiff is "not this [sic] type of person that starts doing sexually explicit acts if she had just had one drink." [Exhibit A at p. 75].

10. Plaintiff's alleged assault would not have happened if Norwegian and its employees had been following Norwegian's policies and procedures. [Exhibit A at p. 85-86].

11. Norwegian "failed to provide safety and security for its passengers by publishing in the Freestyle Daily news an event called the Pub Crawl which pushes 5 drinks in 5 bars in 55 minutes, and states 'Can you handle.'" [Exhibit B at p. 10]. Jaques states that this is "pushing the event for unsuspecting new potential victims" and that it is "a given that they're pushing it." [Exhibit A at p. 88]. Further, by asking "Can you handle," this signifies that Norwegian knows passengers are going to be "over-intoxicated." [Exhibit A at p. 88].

12. "Industry standards show that the excess service and consumption of alcohol substantially increase the likelihood [of] assaults and sexual assaults aboard Cruise Ships." [Exhibit B at p. 6].

## MEMORANDUM OF LAW

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert may offer testimony in the form of an opinion or otherwise if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of this case." When analyzing a challenge to expert testimony under *Daubert*, 509 U.S. 579 (1993), a court must determine whether a proffered expert has employed

"the same level of *intellectual rigor* that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

> The Advisory Committee Notes to the 2000 Amendments to Rule 702 state:
>
> > The amendment affirms the trial court's role as gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony. Consistently with *Kumho*, the Rule as amended provides that all types of expert testimony present questions of admissibility for the trial court in deciding whether the evidence is reliable and helpful. Consequently, the admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.

To be admissible, expert testimony must be properly grounded, well-reasoned and not speculative. "The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned and not speculative before it can be admitted." *See* Advisory Committee Notes to the 2000 Amendments to Fed. R. Evid. 702. Courts have routinely rejected expert testimony where the proffered opinion has not been tested, has not been subjected to scrutiny of peer review, has not gained general acceptance and is otherwise not founded upon "scientific methodology" and "reliable foundation." *See Chikovsky v. Ortho Pharmaceuticals Corporation*, 832 F. Supp. 341, 345 (S.D. Fla. 1993); *Byrnes v. Honda Motor Co.*, 887 F. Supp. 279 (S.D. Fla. 1994).

The trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. This involves assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id*. at 592. Here, the opinions of Jaques are not founded upon scientific methodology and do not possess a reliable foundation as required. Rather, his opinions constitute speculation or unsupported conclusory personal opinions that should not be offered to the jury.

5

### I.  Jaques does not have a reliable methodology.

Jaques describes his methodology as reviewing "all the materials that [he needs] to form [his] opinions," such as deposition transcripts or written statements, and using his familiarity "with the industry itself." [Exhibit A at 103-104]. In this case, Jaques also considered various YouTube videos and information posted on unidentified websites – none of which have been authenticated or otherwise verified. Thus Jaques' "methodology" for formulating his opinions constitutes a simple review of documents associated with the case combined with applying his experience and personal knowledge. This does not constitute a reliable methodology. Any individual, including the members of the jury, can review documents and then formulate opinions based on their generalized knowledge or past experiences. Jaques cites to no studies, experiments or other authorities to support his conclusions. Indeed, this Court has previously excluded and/or limited Jaques' testimony in at least three cases because "his opinions are based entirely on his anecdotal experience and observations and his review of materials provided to him by Plaintiff's counsel." *See Johnson v. Carnival Corp.*, Case No. 07-20147-CIV-UNGARO, ECF No. 150; *see also Mendel v. Royal Caribbean Cruises Ltd.*, Case No. 1:10-cv-23398-JLK, ECF Nos. 145 and 149; *Burdeaux v. Royal Caribbean Cruises, Ltd.*, Case No. 11-22798-CIV-ALTONAGA/Simonton, ECF No. 86. Here, he again attempts to rely on the same methodology that has been deemed insufficient by this Court.

Jaques does not even feign a true methodology. Rather, his testimony is solely based on his subjective belief and unsupported speculation. Many of Jaques' so-called "expert opinions" are merely conclusory statements where the *only* support offered for same is Jaques' claim that he "knows" his opinion to be true because of his general experience. He repeatedly stated during his deposition that he "knew something for a fact" because of his general experience previously

working for cruise ships. [Exhibit A at p. 9, 65, 66, 84, 91]. For instance, Jaques stated that he "knows for a fact" that the pub crawl was "thought up in the home office or recommended by a beverage manager" because "that's how the operation works." [Exhibit A at p. 65-66]. When pressed, Jaques admitted he did not have actual first-hand knowledge on this issue but continued to vaguely claim that he knew it to be true "for a fact." [Exhibit A at p. 66]. With respect to CCTV footage, Jaques again claimed to "know for a fact" that there are 700 cameras on the subject vessel and that Norwegian has CCTV footage that it has withheld.[1] [Exhibit A at p. 91]. Again, he had absolutely no evidence to support these statements other than his prior employment as a security officer on other Norwegian vessels over seven years ago.[2] Such conclusory testimony lacking in *any* methodology should not be permitted. Further, these conclusory statements – even though unsupported by the evidence – have a great tendency to confuse the jury and cause unfair prejudice. They should accordingly be excluded. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County,* 402 F.3d 1092 (11th Cir. 2005) ("Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." (*quoting U.S. v. Frazier,* 387 F.3d 1244, 1263 (11th Cir. 2004)).

The deficiency of Jaques' methodology should be contrasted with cases where putative experts have been excluded on the basis of deficient methodologies. In *United States v. Masferrer*, 367 F. Supp. 2d 1365 (S.D. Fla. 2005), Judge King excluded three of the government's experts on the basis that their proposed testimony did not satisfy the requirements of *Daubert*. In that case, the government brought a 42 count indictment against Masferrer and

---

[1] See Norwegian's Motion *in Limine* to Exclude Certain Evidence wherein Norwegian demonstrates that Jaques' claims regarding withholding of CCTV footage are false.
[2] Indeed, Jaques' contract with Norwegian was terminated after boxes of security incident reports for which he was responsible were accidentally destroyed. [Exhibit A at p. 32].

others arising from fraudulent financial transactions. The government proposed to call three expert witnesses at trial to explain the transactions at issue. One was a professor of international finance law, banking transactions and trade at the graduate level. Another was an investment banker with exemplary credentials, and the third was a well-regarded certified public accountant. The court found that their methodology was not scientifically valid, their opinions were conclusory and their testimony would not aid the jury.

In *Haggerty v. The Upjohn Company*, 950 F. Supp. 1160 (S.D. Fla. 1996), Chief Judge Moreno excluded the plaintiff's expert on the basis that her methodology was not scientifically sound. *Id.* at 1167. In that case, the plaintiff claimed that the prescription drug Halcion caused him to suffer a psychotic episode. The plaintiff retained an expert with a Ph.D. in pharmacology who had published many scholarly articles and was a sitting professor. Nonetheless, the court conducted a *Daubert* analysis and found that the doctor's methods were unsound and her opinions speculative. "In order to be admissible, an expert's testimony must be based on 'more than subjective belief or unsupported speculation.'" *Haggerty*, 950 F. Supp. at 1167, *quoting Daubert*, 509 U.S. at 590. Here, Jaques' opinions are based entirely on subjective belief and unsupported speculation. They are not supported by any testing or other reliable methodology. As such, his testimony should be excluded.

## II. Jaques opinions are not a proper subject for expert testimony.

In addition to lacking a reliable methodology, many of Jaques' opinions are nothing more than legal argument and opinion addressing the ultimate legal issue of Norwegian's liability. For instance, he opines that Norwegian was unreasonable under the law and that it failed to comply with the requirements of Cruise Vessel Security and Safety Act. These legal opinions disguised as expert testimony are improper. *Carballo Rodriguez v. Clark Equip. Co.*, 147 F. Supp. 2d 81

(D. P.R. 2001), demonstrates that Jaques' legal opinion testimony should be excluded. In *Carballo*, the trial court, while allowing one of the plaintiff's experts to testify as to engineering matters, excluded the expert's testimony with respect to his offering of legal conclusions. *See id.* Specifically, the plaintiff's expert was precluded from testifying that the manufacturers of the crane at issue were negligent in failing to perform a "proper safety analysis." *Id.* at 85. The court reasoned that such "expert" testimony does not properly assist the trier of fact and invades the province of the jury. There is a plethora of other cases which similarly exclude such evidence. *See Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92 (1st Cir. 1997) (joining the majority of Federal Circuits in holding that it is black-letter law for the Federal Rules of Evidence to prohibit expert testimony to the jury on the applicable principles of law); *Estate of Sowell v. United States*, 198 F.3d 169 (5th Cir. 1999); *Kidder, Peabody & Co., Inc. v. IAG Int'l Acc. Group*, 14 F. Supp. 2d 391 (S.D.N.Y. 1998) (excluding expert testimony with respect to opinions regarding what a party knew or thought, what New York law on contracts and attachment law was, and whether an individual acted reasonably); *Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (a witness may not testify as to the legal implications of conduct; the Court must be the jury's only source of law).

Further, many of Jaques' opinions basically tell the jury what result to reach in the guise of "expert" testimony. Essentially, Jaques proposes to testify that Norwegian was negligent because it acted unreasonably and that had Norwegian been reasonable, Plaintiff's alleged assault would not have happened. This should not be permitted. *See U.S. v. Delatorre*, 308 Fed.Appx. 380, 383 (11th Cir. 2009; *Montgomery v. Aetna Casualty and Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("An expert may not, however, merely tell the jury what to reach"); *Barnes v. CUS Nashville, LLC*, 2011 U.S. Dist. LEXIS 30167, *4-5 (M.D. Tenn. Mar. 23, 2011)

("By testifying as to the adequacy of warning signs…[the expert] is clearly invading the province of the jury.").

"Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *U.S. v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004) (*citing U.S. v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985). Jaques formulates and renders opinions regarding the applicable law, the factual determinations to be drawn from the evidence and the verdict which he believes the law and the facts mandate, brashly invading both the province of the court and the jury. As described in an analogous context:

> Frequently [witnesses] of this sort would come before the Court clad, so to speak, in sheep's clothing: the potential of the asserted [testimony] to effect important change in the equilibrium of [judge and jury] is not immediately evident, and must be discerned by a careful and perceptive analysis. But this wolf comes as a wolf."

*Morrison v. Olson,* 487 U.S. 654, 699 (1998) (Scalia, J., dissenting).

Norwegian submits that Jaques is not so much an "expert," but more accurately, an advocate for the plaintiff.[3] Indeed, his area of "expertise" is, by nature, generally one created for purposes of litigation. A "very significant fact" is whether Jaques has "developed [his] opinions expressly for purposes of testifying," since "*a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office*." *Daubert v. Merrell Dow Phamaceuticals, Inc.*, 43 F.3d 1311 (9th. Cir.)("*Daubert II*"), cert. denied, 516 U.S. 869, (1995) (emphasis added). Jaques' curriculum vitae reveals that he is a self-proclaimed "safety expert" who "serve[s] as an expert witness in cases involving accidents at sea, slip and falls, sexual harassments, assault, death at sea, shore excursions, pools, waters slides and more…" [Curriculum Vitae of R. Jaques,

---

[3] Such a suggestion was also made by the court in *In re McKesson HBOC, Inc. Securities Lit.*, 126 F. Supp. 2d 1239 (N.D.Cal. 2000), in which a party solicited opinions from three well-respected law professors concerning the ethical propriety of certain actions. Their declarations were stricken. *Id.* at 1247.

**MASE LARA EVERSOLE**

attached hereto as Exhibit "C"]. Jaques goes on to claim that "[s]o far, [he has] successfully refuted every adversary expert. [His] testimony has won million dollar cases." [Exhibit C]. Jaques' list of cases in which he has testified as an expert witness, which is incomplete[4], reveals that for the past three years he has offered testimony only for plaintiffs suing cruise lines. [Case List of Jaques, attached hereto as Exhibit "D"].

**III.    Jaques offers opinions that fall outside his purported area of expertise and that he is unqualified to render.**

Throughout his deposition and Rule 26 Report, Jaques renders opinions regarding the level of intoxication of Plaintiff and other passengers. Jaques testified that Plaintiff and the other passengers were "grossly intoxicated" and that the photographs produced in discovery demonstrate their intoxication. Jaques, however, admits that he is "not a toxicologist" and "not an expert in the field of toxicology." [Exhibit A at p. 73-74]. He even states that he is not offering an expert opinion on intoxication, [Exhibit A at p. 74], but his Rule 26 Report and deposition were full of references to the supposed gross intoxication of Plaintiff. Jaques additionally testified that Pub Crawls are huge revenue earners[5] for Norwegian and that the "vulgar" behavior displayed on the subject Pub Crawl was improper. Neither of these opinions have anything to do with Jaques' supposed area of expertise: safety and security. However, Jaques will seemingly offer opinions on *any* subject at the drop of a hat. As a result, Jaques should be precluded from offering any testimony regarding subjects, such as toxicology, on which he simply is not qualified to testify.

---

[4] Jaques gave deposition testimony in *Schubert v. Regent Seven Seas Cruises*, Case No.: 11-60749-CIV-COHN/SELTZER, *Johnson v. Carnival Corp.*, Case No. 07-20147-CIV-UNGARO, and *Burdeaux v. Royal Caribbean Cruises, Ltd.*, Case No. 11-22798-CIV-ALTONAGA/Simonton. However, for some unknown reason, neither case is included in his list of prior testimony. Jaques was retained by counsel for the plaintiff in all three cases. Further, his testimony was excluded and/or limited in both *Johnson* and *Burdeaux*.

[5] This directly contradicts evidence produced by Norwegian during the course of discovery. However, Jaques apparently chooses to ignore facts that do not support his theories.

CASE NO.: 11-cv-22230-COOKE/TURNOFF

WHEREFORE, Defendant, NCL (BAHAMAS) LTD., respectfully requests that this Honorable Court grant its Motion *in Limine* and enter an Order excluding the testimony of Randall Jaques, appropriately limiting his testimony or granting any further relief this Court deems just and proper.

Respectfully submitted,

MASE, LARA, EVERSOLE, P.A.
*Attorneys for Defendant*
2601 South Bayshore Drive, Suite 800
Miami, Florida  33133
Telephone:  (305) 377-3770
Facsimile:   (305) 377-0080

By:    */s/ Lauren E. DeFabio*
       CURTIS J. MASE
       Florida Bar No. 478083
       cmase@mletrial.com
       LAUREN E. DEFABIO
       Florida Bar No.: 84121
       ldefabio@mletrial.com

CASE NO.: 11-cv-22230-COOKE/TURNOFF

## LOCAL RULE 7.1A (3) STATEMENT

Pursuant to S.D. Fla. L.R. 7.1.A.3 counsel for Defendant hereby certifies that the undersigned has conferred with Plaintiff's counsel in a good faith effort to resolve the issues in the subject motion and Plaintiff's counsel has indicated that they do not agree to the relief sought herein.

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2012, I electronically filed the foregoing document with the Clerk to the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parities who are not authorized to received electronically Notices of Electronic Filing.

*/s/ Lauren E. DeFabio*
Lauren E. DeFabio

**MASE LARA EVERSOLE**

CASE NO.: 11-cv-22230-COOKE/TURNOFF

**SERVICE LIST**
**Case No. 11-22230-COOKE/TURNOFF**

Keith S. Brais, Esq.
Richard D. Rusak, Esq.
Brais & Associates, P.A.
*Attorneys for Plaintiff*
New World Tower
100 North Biscayne Boulevard
Suite 800
Miami, Florida 33132
Tel.: (305)416-2901
Facsimile: (305) 416-2902

18221/1480

**MASE LARA EVERSOLE**