UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-22230-Civ-COOKE/TURNOFF

JANE DOE,

    Plaintiff
vs.

NCL (Bahamas) LTD.,

    Defendant.
_____/

**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS CASE is before me on NCL Bahamas LTD.'s ("Defendant") Motion for Partial Summary Judgment. (ECF No. 109). I have reviewed the arguments, the record, and the relevant legal authorities. For the reasons provided, Defendant's Motion is granted in part and denied in part.

### I.  BACKGROUND

This case concerns allegations of a sexual assault that occurred on April 11, 2011 on the Norwegian Sun, a cruise ship owned and operated by Defendant. The parties agree on a limited set of facts surrounding the alleged assault.[1] Defendant does not admit that a sexual assault occurred. (*See* Def.'s Statement §§16-19).

On April 11, 2011, Jane Doe ("Plaintiff") was a passenger aboard the Norwegian Sun during a cruise that began on April 9, 2011 and ended on April 16, 2011. (Def.'s Statement §1). The guest ticket contract requires that the relationship between the parties be governed by the general maritime law of the United States. (Pl's Statement of Additional Facts §2). The ticket contract

---

[1] The facts set forth in Defendant's Statement of Material Facts are deemed admitted to the extent that they are supported by evidence in the record and are not specifically disputed in Plaintiff's opposing statement of facts. S.D. Fla. L.R. 56.1(b).

1

does not contemplate that Florida law be applicable to the disputes between the parties nor could supplement general maritime law. (*Id.*).

On the date of the alleged sexual assault, Plaintiff participated in a "pub crawl" event organized by Defendant. (Def.'s Statement §4). The pub crawl event advertised and offered five drinks at five different bars throughout the ship. (*Id.*). The event was scheduled to last 55 minutes. (*Id.*). Plaintiff knew the details of the event and the number of drinks offered before she elected to participate. (*Id.*). On the morning of the pub crawl event, Plaintiff took the drug Vicodin, for which she had a prescription. (Def.'s Statement §5). Plaintiff was warned by her physician of the risks associated with alcohol consumption while taking Vicodin. (*Id.*).

The pub crawl event started at 1:15 p.m. and lasted approximately 90 minutes. (Def.'s Statement §8; Pl.'s Statement §8). During the event. the participants were served five drinks.[2] (*Id.*) Plaintiff was a member of the team that had won the most games during the pub crawl event, and she was awarded an extra drink. (Def.'s Statement §9). After the event, Plaintiff remained at the last stop on the pub crawl, the "Great Outdoors" bar, where she socialized with her traveling companions and other passengers. (*Id.* at §§10-11). Soon thereafter, Plaintiff became more acquisitive and ordered two more margarita drinks at the Great Outdoors bar, but only partially consumed the second margarita. (*Id.* at §11). Then, Plaintiff went to use a public restroom. (*Id.* at §16). Plaintiff alleges that she heard a male voice call her name. (*Id.* at §18). Thereafter, Plaintiff alleges that a man entered the toilet stall and sexually assaulted her. (*Id.* at §19). Plaintiff alleges that she did not resist or say "no" because she did not have the ability to do so. (*Id.*). The next morning, Plaintiff reported the assault to the security officer of the Norwegian Sun. (*Id.* at §22).

---

[2] In her Motion for Partial Summary Judgment, Plaintiff stated in her statement of facts that Defendant described the five drinks served as "half drinks." (Pl's Statement. §9). In her Response to Defendant's Motion for Summary Judgment, however, Plaintiff points to evidence showing that the drinks were not weakened or watered down. (Pl.'s Statement §8). Whether the drinks were half drinks or not, ultimately, does not affect my ruling on Defendant's Motion for Summary Judgment or my ruling on Plaintiff's Motion for Summary Judgment.

Plaintiff informed the security officer that Jose Vasquez, a fellow cruise ship passenger, was her primary suspect. (*Id.* at §22).

On June 20, 2011, Plaintiff filed a Complaint against Defendant alleging in Count I that Defendant was strictly liable for the sexual assault allegedly perpetrated by one of its crew members and, in Count II, pleading in the alternative, that Defendant was negligent in failing to take reasonable care in protecting Plaintiff from an assault by another cruise ship passenger. (Comp., ECF No. 1). On October 1, 2012, Defendant moved for a summary judgment as to Count I and II of the Complaint. (Def.'s Mot. for Summ. J., ECF No. 109).

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the trial court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

"The moving party bears the initial burden to show the district court . . . that there is no genuine issue of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* Any inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

When the non-moving party bears the burden of persuasion at trial, the party moving for summary judgment may satisfy Rule 56's burden of production by either (i) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim," or (ii) demonstrating to the court that "the nonmoving party's evidence is insufficient to establish an essential element of the

3

nonmoving party's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Id*.

### III. ANALYSIS

In my order on Plaintiff's Motion for Summary Judgment, I have determined that federal maritime law governs the substantive issues of the case. (Order on Pl.'s Mot. For Summ. J., ECF No. 133).

#### A. Count I of the Complaint: Strict Liability

A ship carrier owes to all who are on board a "duty of exercising reasonable care under the circumstances of each case." *Kermarec v. Co. Gen. Transatlantique*, 358 U.S. 625, 632, (1959). The *Kermarec*'s reasonable care standard, however, does not apply to a crew member's sexual assault on a passenger. *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 913 (11th Cir. 2004). Instead, a ship carrier is strictly liable for crew member assaults on their passengers during the cruise. *Id*. Defendant , however, argues that Count I should be dismissed because Plaintiff has not put forward competent evidence supporting the allegation that a crew member assaulted her. Def.'s Mot. For Summ. J. 10-11.

At the initial pleading stage, Plaintiff speculated that either a crew member or a passenger assaulted her. Comp. 3-5. Accordingly, Plaintiff pled Count I on the theory that her assailant was the Defendant's employee, and Count II on the theory that her assailant was a passenger. *Id.* Now, at the summary judgment stage, both parties have had ample opportunity to conduct discovery, yet Plaintiff cannot point to any evidence supporting the theory that a crew member assaulted her. *See* Pl.'s Resp. to Def.'s Mot. For Summ. J. 11;12. Instead, Plaintiff argues that "[t]he evidence which would show the attacker is a crewmember is a [closed-circuit television ("CCTV")] video footage of the person who followed Plaintiff in the restroom," but contends that Defendant failed to preserve

4

and produced the video. *See id.* at 11; 12. Plaintiff further argues that because of the spoliation, I should infer that a crew member committed the rape and deny summary judgment on Count I. Pl.'s Resp. to Def.'s Mot. For Summ. J. 12.

Plaintiff relies on the testimony of the Defendant's security officer, Joe Fail, to allege that the video existed. *See id.* at 12. Joe Fail, however, only testified that *typically* there would be cameras in public areas like a restaurant:

> Question: Some do. Okay. So would another area that typically leading up to these events, say a public area like a restaurant, would that also be an area where there would be typically a CC-TV camera head or more than one aboard the SUN?
> Mr. Mase: Object to the form.
> Joe Fail: Yes.

Fail. Dep. 76:15; 76:21.

Joe Fail further testified that he did not know if there was in fact a camera that may have captured the events.

> Question: Would your normal responsibilities have included for you to see if there were any CC-TV camera heads that may have captured any of the events involved in whatever is being reported to you?
> Joe Fail: Yes.
> Question: Okay. As you sit here today, you can't recall if you did that in this case: am I right?
> Joe Fail: Correct.
> Question: So you may have looked and you may have made an observation that there's a CC-TV camera or you may not have looked, you don't remember?
> Joe Fail: I don't remember.
> Question: Okay. You weren't, however, at some later time that -- I think you said there was no coverage; am I right?
> Joe Fail: I believe that was - they said they had no coverage.

Fail. Dep. 78:21; 79:14.

Plaintiff, therefore, has not put forward any evidence that there was CCTV footage of the person that followed her in the restroom and her spoliation claim must fail. *Point Blank*

5

Case 1:11-cv-22230-MGC   Document 134   Entered on FLSD Docket 11/14/2012   Page 6 of 13

*Solutions, Inc., v. Toyobo Am., Inc.*, 09-61166-CIV, 2011 WL 1456029, at *9 (S.D. Fla., Apr. 5, 2011) (finding that the party seeking spoliation sanctions must first prove that the missing evidence existed at one time).

On the other hand, Defendant pointed to evidence supporting Plaintiff's alternative theory that her assailant was a passenger. In his deposition, Joe Fail testified that Plaintiff informed him that Jose Vasquez, a cruise ship passenger and Plaintiff's teammate in the pub crawl events, was her "number one suspect." Fail Dep. 26:21; 26:22. In Plaintiff's answers to Defendant's interrogatories, Plaintiff stated that, although she was not 100% certain of her assailant's identity, she believed Jose Vasquez was the assailant. Pl.'s resp. to Def.'s Interrog. §3. Further, on May 18, 2012, Plaintiff filed a separate action against Jose Vasquez in the District Court for the Northern District of Texas, identifying Mr. Vasquez as her assailant in her complaint. *Doe v. Vasquez*, 4:12-cv-312 (S.D. Tex. 2012). Finally, Plaintiff also represented to this Court in her Emergency Motion to Temporarily Stay Proceedings Pending Transfer and Consolidation of Related Cases, that she believed her initial identification of her assailant was "corroborated" and left "essential [sic] no doubt about the identity of her assailant." Pl.'s Mot. to Temporarily Stay §6.

Plaintiff has not put forward any evidence to defeat Defendant's Motion for Summary Judgment as to Count I. At this stage of the procedure, Plaintiff cannot merely rest upon an initial speculation that her assailant could have been a crew member. *See Celotex,* 477 U.S. at 323 (finding that the court must enter summary judgment for the moving party when the non-moving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof); *see also*

6

*Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 840 (11th. Cir. 2000). Accordingly, Count I is dismissed with prejudice.

### B. Count II of the Complaint: Negligence

In Count II of the Complaint, Plaintiff alleges that Defendant breached its duty of care in two ways: (1) by failing to not over serve Plaintiff alcohol; and (2) by failing to warn Plaintiff that she may be the target of a physical attack or sexual assault on the vessel. (Comp. 4-5).

#### *1. The Duty to Not Over Serve Plaintiff Alcohol*

Defendant argues that Defendant had no duty to not over serve alcohol because the Florida anti-dram shop liability statute applies to this case. Def.'s Mot. For Summ. J. 12-16; §768.125, Fla. Stat. (2012). Defendant also argues that, even assuming it had such a duty, the evidence demonstrates that Defendant did not breach that duty. *Id.* at 16-18.

#### a. Application of the Florida Statute § 768.125

The Florida anti-dram shop liability act, which restricts liability for the service of alcohol, states as follows:

> A person who sells or furnishes alcoholic beverages to a person of lawful drinking age shall not thereby become liable for injury or damage caused by or resulting from the intoxication of such person, except that a person who willfully and unlawfully sells or furnishes alcoholic beverages to a person who is not of lawful drinking age or who knowingly serves a person habitually addicted to the use of any or all alcoholic beverages may become liable for injury or damage caused by or resulting from the intoxication of such minor or person.
> §768.125, Fla. Stat..

Accordingly, Florida Statute §768.125 bars claims for over service of alcohol except in two limited circumstances, i.e when the liquor is furnished to a minor or to a person habitually addicted to alcohol. Since there is no dispute that Plaintiff was 50 year-old at the time of the alleged assault and not addicted to alcohol, Defendant argues that I should enter a judgment as a matter of law in its favor. Def.'s Mot. for Summ. J. 12-16. Plaintiff, on the other hand, argues that Defendant failed to

raise the Florida's anti-dram shop liability act as an affirmative defense and that federal maritime law, not the Florida law, applies to this case. Pl.'s Resp. to Def.'s Mot. For Summ. J. 13-18.

Federal Rule of Civil Procedure 8(c) requires that in responding to a pleading, a party shall set forth affirmatively any matter constituting an avoidance or affirmative defense." Fed. R. Civ. P. 8(c). In general, a party's failure to raise an affirmative defense in the pleadings results in a waiver of the defense. *See Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1350 (11th Cir. 2007). The parties, however, have not cited any authority for the proposition that Florida's anti-dram shop liability act is an affirmative defense within the definition of Rule 8(c). Pl.'s Resp. to Def.'s Mot. for Summ. J. 13; Def.'s Reply to Def.'s Mot. for Summ. J. 3-4. It seems that there is indeed no caselaw directly on point. Arguably, however, the Florida's anti-dram shop liability act negates an element of Plaintiff's prima facie case, i.e. the existence of a duty of care to not over serve alcohol. *See In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) (citing 2A J. Moore and J. Lucas, Moore's Federal Practice §§8.27[1], 8.27[4] (2d ed.1985)) (finding that defenses that negate an element of the plaintiff's *prima facie* case are excluded from the definition of affirmative defense in Federal Rule of Civil Procedure 8(c)).

However, even assuming that Defendant had waived its ability to raise Florida's anti-dram shop liability act as a bar to Plaintiff's claim, Florida law is not applicable in this case. First, Defendant failed to address Plaintiff's argument that Florida law is generally not applicable to this case. Indeed, as Plaintiff points out, the contract between the parties does not contemplate the application of Florida law, the cruise ship is registered in Bahamas, and the service of alcohol occurred on the high seas, not on the Florida territorial waters. Pl.'s Resp. to Def.'s Mot. for Summ. J. 14. Second, even if Florida law were to supplement the general principles of admiralty law in this case, the Florida anti-dram shop liability act does not apply here. In at least two instances, Florida state and federal courts have refused to apply Florida's anti-dram shop liability act to maritime

cases. In *Hall v. Royal Caribbean Cruises, Ltd.*, Florida's Third District Court of Appeal held that the plaintiff could sue the ship owner in negligence for serving Plaintiff alcohol past the point of intoxication, where, unable to look after himself, the inebriated plaintiff fell down two flights of open stairways. *Hall v. Royal Caribbean Cruises, Ltd.*, 888 So. 2d 654(Fla. Dist. Ct. App. 2004), *cert*. *denied* 545 U.S. 1114 (2005). The Third District Court of Appeal stated that it disagreed with the minority position adopted by few lower courts in other circuits that the issue may be governed by the dram shop act of the forum state. *Id.* at 655 n.1. Citing Robert D. Peltz, The Myth of Uniformity in Maritime Law, 21 Tul. Mar. L.J. 103 (1996), the *Hall court* explained that, although most maritime suits may be filed in state court, they are nevertheless governed by substantive federal maritime law to maintain the uniformity which is necessary for a national maritime law.[3] *Id.* In *Doe v. Royal Caribbean Cruises, Ltd*, the Honorable J. Goodman of the Southern District of Florida, in an action very similar to the present action, also declined to apply the Florida anti-dram shop act to a maritime case. *Doe v. Royal Caribbean Cruises, Ltd*, 11-23323-CIV, 2011 WL 6727959, at *1 (S.D. Fla. Dec. 21, 2011). In *Royal Caribbean Cruises*, the plaintiff, who allegedly had been sexually assaulted in the restroom of the cruise ship by a fellow cruise ship passenger, sued the cruise line in negligence for over-serving her alcohol. *Id.* Judge Goodman noted there were apparently no Eleventh Circuit cases recognizing this theory of liability, but no cases that foreclosed it either; and therefore allowed plaintiff to proceed with her claim. *Id.* at *4.

      I share in the Third District's criticism of the few isolated cases that have supplemented federal maritime law by applying state dram shop acts. *See, e.g. Voillat v. Red & White Fleet*, No. C-03-3016, 2004 WL 547146, at *3-4 (N.D. Cal. Mar. 18, 2004) (applying California anti-dram shop provision to bar the cruise line's liability for over serving alcohol, where an intoxicated

---

[3] Thereafter, the defendant sought to challenge, among other things, the *Hall* court's refusal to apply the Florida anti-dram shop liability act by filing a petition for writ of certiorari in the Supreme Court of the United States. *Royal Caribbean Cruises, Ltd.*, *v. Hall*, 2005 WL 623117 (U.S.). The Supreme Court, however, summarily denied certiorari. 545 U.S. 1114 (2005).

plaintiff had been thrown overboard by another intoxicated passenger); *Meyer v. Carnival Cruise Lines, Inc.*, No. C-93-2383, 1994 WL 832006, at *3-5 (N.D. Cal., Dec. 29, 1994) (applying California anti-dram shop provision to allow a claim in negligence to proceed against a defendant cruise line who served alcohol to a eighteen year-old minor who injured herself while intoxicated); *Horak v. Argosy Gaming Co.*, 648 N.W.2d 137, 142-47 (Iowa 2002) (applying the Iowa dram shop act to allow a negligence claim against a riverboat casino who served alcohol to a woman who later killed herself in an automobile accident on her way home). First and foremost, the application of state dram shop acts necessarily undermines the objective of uniformity of maritime law. The fifty states have a mosaic of dram shop acts, anti-dram shop acts, with a flurry of applicable exceptions and differing interpretations. *See, e.g. Horak*, 648 N.W.2d at 147 (finding that the Iowa dram shop act was not in conflict with the general maritime principles but acknowledging that the Louisiana *anti*-dram shop act could). Second, the courts that applied state dram shop acts to bar such negligence claims often relied on the premise that there was no maritime dram shop rule and thus that they were free to supplement maritime law with state law provisions that did not undermine the general principles of admiralty law. *See, e.g. Meyer*, 1994 WL 832006, at *4 ("extensive research has uncovered no federal maritime dram shop rule"); *Horak*, 648 N.W.2d at 147 (finding that there is no maritime dram shop rule comparable to the Iowa dram shop rule or a uniform body of maritime common law imposing tort liability on sellers of alcohol). The field, however, is already be preempted by the general principles of negligence. *See, e.g., Kermarec v. Co. Gen. Transatlantique*, 358 U.S. 625, 626 (1959) (rejecting New York's premises liability law in favor of the "settled principle of maritime law" that a ship owner owes a duty of reasonable care under the circumstances declining, where the guest of a cruise ship passenger sued the cruise line for injuries sustained in a fall on a stairway of the vessel). Accordingly, I decline to apply the Florida dram shop act to bar Plaintiff's negligence claim in this case. Instead, the *Kermarec* reasonable care

standard shall apply. Thus, the Florida anti-dram shop act cannot bar Plaintiff's claim and does not warrant the entry of summary judgment as to Count II of the Complaint.

### b. Defendant's Breach of Duty to Not Over Serve Alcohol

Defendant argues that, even assuming it had a duty not to over serve alcohol, the evidence demonstrates that Defendant did not breach that duty. Def.'s Mot. For Summ. J. 16-18. As discussed above, a cause of action for over service of alcohol sounds in negligence. *Hall v. Royal Caribbean Cruises, Ltd.*, 888 So. 2d 654 (Fla. Dist. Ct. App. 2004) (collecting cases). Specifically, the facts of the case must be such that a "reasonable defendant would have been on notice of the impending danger to the plaintiff." *Royal Caribbean Cruises*, 2011 WL 6727959, at *4 (S.D. Fla. Dec. 21, 2011). Accordingly, the intoxicated passenger's behavior is relevant to the determination that Defendant in this case was on notice of the danger. *Id.* (holding that what the defendant *actually* observed could put a defendant on notice of the danger); *see also Hall v. Royal Caribbean Cruises, Ltd.*, 888 So. 2d at 654 (finding that a complaint stated a cause of action against a cruise ship, where the passenger alleged that he was *obviously* past the point of intoxication and unable to look after himself).

In this case, the parties disagree on whether Plaintiff visibly was intoxicated. *See* Def.'s Statement §§13-14; Laughrey Dep. 35:4; 35:9 (testifying that Plaintiff was not in a state of inebriation); R. Spencer Dep. 36:12; 36:19 (testifying that Plaintiff was not slurring her words); *but see* Pl.'s Statement §14; R. Spencer Dep. 35:25; 36:6 (testifying that Plaintiff was drunk); Pl.'s Dep.186:14; 187:14 (testifying she was intoxicated enough she would not have gotten behind a wheel). Accordingly, whether Plaintiff was visibly intoxicated is an issue for the jury and judgment as a matter of law is not warranted on the issue of the alleged over service of alcohol by Defendant.

### 2. *The Duty to Warn Plaintiff that She May Be the Target of a Sexual Assault.*

Defendant contends that Defendant had no duty to warn Plaintiff of prior sexual assaults

since there was no unreasonable risk that an assault be committed aboard the cruise ship. Def.'s Mot. For Summ. J. 18-20. To support its argument, Defendant attempts to compare statistics regarding sexual assaults aboard cruise ships and statistics regarding sexual assaults in the Plaintiff's hometown. *See id.* at 19-20.

The standard of reasonable care applicable to a cruise ship carrier includes the duty to warn passengers of dangers that are not apparent and obvious. *Harnesk v. Carneval Cruise Lines Inc.*, 87–2328–Civ, 1991 WL 329584, at *4 (S.D. Fla. Dec. 17, 1991) (citing *Luby v. Carnival Cruise Lines, Inc.*, 633 F. Supp. 40, 41 n.1 (S.D. Fla. 1986)). To impose liability, the carrier must have had actual or constructive notice of the risk-creating condition. *Id*. Thus, a finding of negligence in a passenger personal injury action is determined on a case-by-case basis. *Id.* Further, when the danger is a criminal act carried out by a non-crewmember, a party will be liable in negligence for intervening criminal acts only if the acts were foreseeable. *Doe v. Royal Caribbean Cruises, Ltd*, 11-23323-CIV, 2011 WL 6727959, at *2 (S.D. Fla. Dec. 21, 2011) (citing *Carlisle v. Ulysses Line Ltd., S.A.*, 475 So. 2d 248 (Fla. Dist. Ct. App. 1985)); *see also* Restatement (Second) of Torts § 442B cmt. c. ("tortious or criminal acts may in themselves be foreseeable, and so within the scope of the created risk [by the actor's negligence], in which case the actor may still be liable for the harm . . . But if they are not, the actor is relieved of responsibility by the intervention of the third person"). The issue foreseeability is ordinarily a jury question where there is sufficient evidence of foreseeability to preclude a determination of the issue as a matter of law. *Carlisle*, 475 So. 2d at 251.

In this case, as I have already discussed in my Order on Plaintiff's Motion for Summary Judgment, whether the risk of sexual assault was foreseeable, whether Plaintiff was at heightened risk of a sexual assault aboard Defendant's cruise ship, and whether, but for the service of alcohol, Plaintiff could have avoided the sexual assault, are issues for the jury to determine. *See* Order on

Pl.'s Mot. For Summ. J., ECF No. 133. Accordingly, a determination as a matter of law that Defendant did not breach a duty to warn Plaintiff of the risk of a sexual assault is not warranted and summary judgment must be denied on Count II of the Complaint.

## IV. CONCLUSION

Accordingly, it is **ORDERED and AJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (ECF No. 109) is **GRANTED IN PART and DENIED IN PART.**

2. Count I is dismissed with prejudice.

3. Count II shall proceed.

**DONE and ORDERED** in chambers, at Miami, Florida, this 14th day of November 2012.

*/s/ Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*